In re ENRON CORP., et al.,
Reorganized Debtors.

Enron Corp., et al., Plaintiffs,

v.

Citigroup, Inc., et al., Defendants.

Bankruptcy No. 01–16034 (AJG).
Adversary No. 03–09266 A.

United States Bankruptcy Court,
S.D. New York.

Aug. 14, 2006.

Susman Godfrey L.L.P., by Kenneth S. Marks, Esq., Suyash Agrawal, Esq., Of Counsel, Houston, TX, Togut, Segal & Segal LLP, by Richard K. Milin, Esq., Neil Berger, Esq., Of Counsel, New York, NY, Co–Counsel for Reorganized Debtors.

Venable LLP, by Michael K. Madden, Esq., Of Counsel, New York, NY, Special Counsel for Reorganized Debtors.

LeBoeuf, Lamb, Greene & MacRae, by Dean Hansell, Esq., Mark R. Bernstein, Esq., Of Counsel, New York, NY, Co–Counsel for Debtors and Plaintiff EPMI.

Allen & Overy LLP, by Hugh M. McDonald, Esq., Douglas R. Davis, Esq., Of Counsel, New York, NY, Counsel for Barclays Bank PLC.

Paul, Weiss, Rifkind, Wharton & Garrison LLP, by Stephen J. Shimshak, Esq., Claudia R. Tobler, Esq., Of Counsel, New York, NY, Counsel for Citigroup and Affiliates.

Shearman & Sterling, LLP, by William J.F. Roll, III, Esq., Of Counsel, New York, NY, Counsel for the Merrill Lynch Entities.

White & Case LLP, by Titia A. Holtz, Esq., Of Counsel, New York, NY, Counsel for the Deutsche Bank Entities.

Squire, Sanders & Dempsey LLP, by Jeffrey A. Marks, Esq., Of Counsel, Cincinnati, OH, Counsel for Official Committee of Unsecured Creditors.

## OPINION CONCERNING DETERMINATION PURSUANT TO 28 U.S.C. § 157(b)(3)

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Barclays Capital Securities Limited, Barclays Physical Trading Limited and Barclays Metals Limited (collectively "Barclays") filed in this adversary proceeding (the "Adversary Proceeding") a Motion for Initial Determination under 28 U.S.C. § 157(b)(3)[1] that Certain Claims are Non–Core Claims (the "Motion"). Barclays seeks this determination as a prelude to moving before the district court to withdraw the reference of this Adversary Proceeding. *See Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC,* 285 B.R. 822, 828 (S.D.N.Y.2002) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir.1993), for the proposition that when a district court considers whether to withdraw the reference, an evaluation must first be made of whether the proceeding is core or non-core)).

*Facts*

Commencing on December 2, 2001, and from time to time continuing thereafter,

---

1. 28 U.S.C. § 157(b)(3) provides in its relevant part that "[t]he bankruptcy judge shall determine whether a proceeding is a core proceeding."

Enron Corp. and certain of its affiliated entities (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

Barclays filed with this Court several separate proofs of claim (the "Barclays Proofs of Claim") against the Debtors seeking in excess of $85 million, plus unliquidated amounts. One of the Barclays Proofs of Claim (the "JT Transaction Proof of Claim") relates to a certain transaction known as the J.T. Holdings transaction (the "JT Transaction"), which concerned a letter of credit reimbursement agreement, dated December 7, 2000, Barclays had entered into with Enron Corp. The JT Transaction Proof of Claim also asserted a claim for "contribution, indemnification, reimbursement, and /or any other obligation arising in favor of [Barclays] or any of its affiliates in connection with certain litigation in which [Barclays] is named as a defendant."

In September 2003, Enron Corp. and certain of its affiliated debtors (collectively, "Enron") commenced this Adversary Proceeding by filing a complaint, subsequently amended several times (as amended, the "Complaint"), against Barclays and other banks and investment banks (collectively, the "Banks"). The Complaint alleges the existence of a scheme between the Banks and Enron's senior officers and managers (collectively, the "Enron Insiders") to manipulate and misstate Enron's financial condition. The Complaint further alleges that the Banks assisted in the alleged scheme by designing, implementing and, on certain occasions, financing structured transactions, even though the Banks were fully aware that the Enron Insiders were improperly recording the financial effects of these transactions. The Complaint was filed as a counterclaim to any proofs of claim filed by the Banks.

Barclays filed the Motion in response on July 26, 2005. Barclays asserts that certain of the counts pleaded in the Complaint against Barclays are not core matters pursuant to 28 U.S.C. § 157(b)(2). Specifically, Barclays maintains that the counts alleging that Barclays (i) aided and abetted breach of fiduciary duty, (ii) aided and abetted fraud, and (iii) engaged in an unlawful civil conspiracy (collectively, the "Common Law Claims") are non-core state common law claims. In addition, Barclays demands a jury trial with respect to any non-core claims asserted against it.

On September 12, 2005, Enron filed an objection to the Motion. Enron acknowledges that the Common Law Claims would be considered non-core matters when analyzed in isolation. Enron contends, however, that these claims are properly considered core matters when examined in the context of the Adversary Proceeding because Barclays submitted to this Court's equitable jurisdiction by (i) filing multiple proofs of claim seeking to share in the Debtors' estate, and (ii) asserting setoff defenses in this Adversary Proceeding, as well as because the Complaint is, in effect, the assertion of counterclaims against the Barclays Proofs of Claim.

Several of the defendants in this Adversary Proceeding filed joinders to the Motion. Certain of those defendants subsequently reached settlement agreements with Enron and withdrew their joinders. A hearing on this matter was held before the Court on June 22, 2006.

## DISCUSSION

■ 28 U.S.C. § 157(b)(1) provides, in relevant part, that bankruptcy courts

may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Any decision made by a bankruptcy court in a non-core proceeding, however, is subject to *de novo* review by the district court. *Complete Management, Inc. v. Arthur Andersen, LLP (In re Complete Management, Inc.)*, 2002 WL 31163878 *1 (S.D.N.Y.2002). 28 U.S.C. § 157(b)(2) enumerates certain types of core proceedings, including matters concerning the administration of the estate, the allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship. 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). However, the section further indicates that core proceedings are not limited to the listed types. 28 U.S.C. § 157(b)(2).

■ This section was enacted in response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Court, before considering the constitutionality of bankruptcy court jurisdiction, first addressed the distinction between core and non-core jurisdiction. *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 228 (2d Cir. 2002). As the Second Circuit has noted, *Marathon* serves as a warning that courts must be mindful of distinguishing the bankruptcy court's core power to restructure debtor-creditor relations from the adjudication of state-created private contract rights. *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 636 (2d Cir.1999), (citing *Marathon*, 458 U.S. at 71, 102 S.Ct. 2858). Nonetheless, the Second Circuit has also reiterated its view that "core proceedings" are to be given a broad interpretation corresponding to constitutional limits. *Id.* at 636–37. In addition, 28 U.S.C. § 157(b)(3) provides that a bankruptcy court's determination that a proceeding is not core "shall not be made solely on the basis that its resolution may be affected by State law." These decisions and the statutory text thus give rise to the expectation that the bankruptcy court will retain jurisdiction over most proceedings. *Enron Power Marketing, Inc. v. Nevada Power Co. (In re Enron Corp.)*, 2004 WL 3015256 *5 (S.D.N.Y.2004) (citing, *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir.1995)).

■ In *United States Lines*, the Second Circuit found that the degree to which the proceeding is independent of the reorganization is one of the key considerations in determining whether a contract proceeding is core. Further, this "inquiry hinges on 'the nature of the proceeding.'" *Id.* at 637. The Second Circuit stated that "[p]roceedings· can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings ... or (2) the proceedings directly affect a core bankruptcy function." *Id.* Core functions include establishing the priority of creditor claims, gathering the debtor's property for distribution to creditors, and administering the debtor's property. *Id.* Therefore, the proceeding is core, even if claims are based upon prepetition contracts, where the resolution of the contract dispute directly affects a core administrative function. *Id.* at 638–39.

It has been suggested that a determination of a debtor's claim affects the value of its assets and, therefore, can technically be viewed as falling within the core catchall of § 157(b)(3)(O) to the extent it "affects the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." Nevertheless, courts are reluctant to determine that a proceeding is a core proceeding solely because of the potential for increased value enuring to the estate. *Complete Management,* at *3 (citing cases). Simply, such an interpretation would eliminate entirely the core/non-core distinction and would thus run afoul of *Marathon. Id.* (citing *Orion,* 4 F.3d at 1102).

■ When a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it involves a pre-petition contract claim arising under state law. *S.G. Phillips Constructors, Inc.,* 45 F.3d at 705, (citing *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1389 (2d Cir.1990)). The filing of the claim triggers the process concerning "allowance and disallowance of claim" and establishes the creditor's right to participate in the distribution of the estate. *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1991); *First Fidelity Bank v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),* 937 F.2d 833, 838 (2d Cir.1991). This process is integral to the debtor's restructuring accomplished through the equity jurisdiction of the bankruptcy court. *Hooker,* 937 F.2d at 838.

■ Thus, courts have consistently found that traditionally non-core proceedings are rendered core pursuant to § 157(b)(2)(B) and (C) where a creditor files a proof of claim or asserts a counterclaim seeking set-off. *Iridium,* 285 B.R. at 831 (citing cases). The courts reason that such creditors invoke the equitable jurisdiction of the bankruptcy court and avail themselves of the special procedures present only in the context of a bankruptcy proceeding (e.g., obtaining estimation of a claim for voting purposes or exercising the right to vote on a proposed distribution). *Iridium,* 285 B.R. at 830–831 (citations omitted). Similarly, courts have concluded that where a creditor has filed a proof of claim and initiated a proceeding that affects the allowance or disallowance of a claim, adversary proceedings commenced by the debtor and which are tantamount to a counterclaim are also properly considered core. In such situations, the courts reason, the proceeding affects the disallowance or allowance of the creditor's claim against the estate within the meaning of § 157(b)(2)(B). *Id.* Finally, it is appropriate to consider a proceeding a core proceeding where a debtor commences an action against a creditor, and the creditor asserts a set-off counterclaim that also affects the allowance and disallowance of claims against the estate. *Iridium,* 285 B.R. at 831. Moreover, to the extent that there are mutual, pre-petition debts, "a setoff claim takes on particular importance in the context of bankruptcy, as it, in effect, 'elevates an unsecured claim to secured status.'" *North American Energy Conservation, Inc. v. Interstate Energy Resources, Inc. (In re North American Energy Conservation, Inc.),* 2000 WL 1514614 (S.D.N.Y.2000), *quoting, Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984).

Barclays relies on *Orion* to argue that the distinction between core and non-core proceedings advanced in *Marathon* would be eliminated if this Court concludes the Common Law Claims are core claims. 4 F.3d at 1095. In *Orion,* the Second Circuit concluded that the debtor's cause of

action for anticipatory breach of a pre-petition contract, which sought declaratory and other relief, was non-core, even though the event that triggered the debtor's claim occurred postpetition. *United States Lines,* 197 F.3d at 638 (citing *Orion,* 4 F.3d at 1097, 1102). However, the defendant in *Orion* had not filed a proof of claim and was therefore "otherwise uninvolved in the underlying bankruptcy proceeding." *Iridium,* 285 B.R. at 834. Thus, the instant case is distinguishable from *Orion,* as Barclays has filed several proofs of claim against Enron's estate, namely, the Barclays Proofs of Claim. Here, like the creditor in *Iridium,* Barclays is "intimately involved with the bankruptcy proceeding." *Iridium,* 285 B.R. at 834.

■ Moreover, the JT Transaction Proof of Claim is based upon the JT Transaction, which is one of the transactions referenced in the Complaint. The bankruptcy court's equitable jurisdiction encompasses interrelated claims that a debtor asserts against a creditor who filed a proof of claim. Enron argues that the JT Transaction was part of the alleged scheme between Barclays and the Enron Insiders to manipulate and misstate Enron's financial condition, and it is the alleged scheme between Barclays and the Enron Insiders that forms the basis of the Common Law Claims. The same transaction thus forms the basis of the JT Transaction Proof of Claim and the Common Law Claims, as Enron asserts that absent the letter of credit—which is the subject of and basis for the JT Transaction Proof of Claim—the transaction itself would not have come to fruition. The alleged damages stem from the entirety of the transaction in facilitating the continuance of a company that had lost its value. Thus, the same transaction gives rise to both the JT Transaction Proof of Claim and the Common Law Claims. Therefore, the Common

Law Claims are core proceedings in that they stem from the same transaction and are logically connected to the JT Transaction Proof of Claim.

In addition, Barclays has asserted in the JT Transaction Proof of Claim a broad claim for contribution and indemnification arising out of any of the numerous lawsuits, including securities fraud lawsuits, that have been brought against Barclays. Many of those lawsuits accuse Barclays of participating in the same scheme, *inter alia,* upon which the Complaint rests. The alleged scheme Enron identifies in the Complaint stems from the banking relationship between the Banks and Enron, and the securities fraud litigation arises from that same relationship. Thus, Barclays' claim for contribution and indemnification put that relationship before this Court, and Barclays has therefore not been "involuntarily subjected" to this Court's jurisdiction. *Iridium,* 285 B.R. at 834.

Further, the Common Law Claims have been asserted in the Adversary Proceeding as counterclaims to the Barclays Proofs of Claim. They are thus essentially objections to those proofs of claim and could provide a defense. In particular, the JT Transaction Proof of Claim and the Common Law Claims stem from the same operative facts, such that the resolution the Common Law Claims would determine whether the JT Transaction Proof of Claim should be disallowed. Therefore, proceedings related to the Common Law Claims are core proceedings, as, pursuant to 28 U.S.C. § 157(b)(2)(B), the Common Law Claims are counterclaims and affect the allowance and disallowance of the JT Transaction Proof of Claim.

Finally, Barclays asserts that the counterclaims are subject to Barclays's setoff rights, including the right to setoff any amounts claimed in the Barclays Proofs of

Claim. Barclays has thus invoked this Court's core jurisdiction to determine the validity of its affirmative defense of set-off rights against the Common Law Claims.

 Barclays also argues, in light of the above reasoning, that this Court has jurisdiction over the Common Law Claims as a core proceeding only to the extent the Common Law Claims seek an award proportional to the debt asserted in the JT Transaction Proof of Claim or the set-off rights Barclays claims. *See Complete Management,* 2002 WL 31163878 at \*3 (questioning, although not deciding, whether a bankruptcy court's equitable jurisdiction would extend to a counterclaim that was seventy times greater than a creditor's proof of claim). Barclays asserts that the claims allowance process previously identified would not be implicated to the extent the Common Law Claims exceed the value of the JT Transaction Proof of Claim or the set-off rights Barclays has asserted.

However, Barclays invoked this Court's jurisdiction by filing the Barclays Proofs of Claim. The Barclays Proofs of Claim seek a substantial amount. With respect to the JT Transaction Proof of Claim, in addition to the $1,184,000 amount sought pursuant to the letter of credit, Barclays seeks contribution and indemnification against Enron for its costs in defending certain lawsuits, including securities actions alleging the same facts asserted in the Common Law Claims.[2] These claims are for an indeterminate amount. While Barclays asserts a debt related to the JT transaction letter of credit that is comparatively smaller than Enron's damage claim, such claim, by itself, is not *de minimis.*[3] When

---

**2.** Barclays asserts that pursuant to a previous order issued by this Court on September 15, 2005 (the "September 15th Order"), the JT Transaction Proof of Claim has been estimated for distribution purposes at $2,000,000.00. Barclays argues that after confirmation of Enron's plan and entry of the September 15th Order, Barclays cannot recover on the contingent contribution and indemnification portion of the JT Transaction Proof of Claim. Barclays concludes, therefore, that its contribution and indemnification claims cannot sustain this Court's core jurisdiction over the Common Law Claims. The September 15th Order, however, is further evidence that Barclays initially invoked this Court's equitable jurisdiction with respect to its claim and such jurisdiction was employed for the purpose of estimating its claim. The Court's equitable power to set reserves, *inter alia,* protects Barclays's interest in a future distribution of Enron's estate. Further, Barclays initially sought to invoke this Court's jurisdiction by including these broad, sweeping claims for contribution and indemnification that arise out of the same transaction as Enron's counterclaims. That those claims were estimated as having little or no value does not diminish the extent to which Barclays sought to invoke this Court's equitable jurisdiction. The disposition of a claim, alone, does not nullify the consequences of a creditor's invocation of jurisdiction premised upon such claim. *See EXDS, Inc. v. RK Electric, Inc. (In re EXDS, Inc.),* 301 B.R. 436, 439–41(Bankr.D.Del.2003) (concluding that "a creditor [cannot], for strategic reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the claim"); *The Academy, Inc. v. James, Hoyer, Newcomer, & Smiljanich, P.A., et al. (In re The Academy, Inc.),* 289 B.R. 230, 234–35 (Bankr.M.D.Fla.) ("The fact that [the defendants in adversary proceeding] no longer wish to assert claims against the [debtor] should not impact in any way the court's jurisdiction over them for the purpose of the [debtor]'s claims against them."). The same reasoning applies to Barclays's contention that this Court does not have core jurisdiction because Barclays did not reassert its claim for set-off rights concerning contribution and indemnification in its amended answer.

**3.** The Court does not reach the issue of whether the same result would obtain if there were a large disparity between a debtor's counterclaim when compared to a creditor's proof of claim and the proof of claim were *de minimis.* Further, with respect to the defendants who filed joinders to the Motion, inasmuch as their respective proofs of claim filed

considering that claim in conjunction with the contribution and indemnification assertions, Barclays sought potentially substantial recoveries from Enron. Thus, as Barclays invoked this Court's jurisdiction in an attempt to recover a substantial debt, and as the JT Transaction Proof of Claim and the Common Law Claims are connected and stem from the same transaction, this Court has jurisdiction over the Common Law Claims as a core proceeding.

The Common Law Claims are affirmative defenses to the Barclays Proofs of Claim and will therefore have a significant impact on the administration of the estate and the efficient functioning of the bankruptcy system. Moreover, at issue is the allowance or disallowance of the JT Transaction Proof of Claim, the validity of the counterclaims, and the liquidation of assets of the estate. Thus, the matter before the Court is core.

### Conclusion

The Court concludes therefore that Common Law Claims are core claims pursuant to § 157(b)(2)(B) and (C) and that it thus has jurisdiction over the Common Law Claims.

Counsel for Enron is to settle an order consistent with this Opinion.

against Enron were for greater amounts than that filed by Barclays, the analysis set forth in this Opinion would apply to them as well.

Therefore, appropriate orders should be entered with respect to those defendants.